WARREN, Respondent, vs. GLOBE INDEMNITY COMPANY OF NEW YORK, Appellant.

*January 14—February 10, 1920.*

*Insurance: Occupation of insured: Classification by insurer after full disclosure of duties by insured: Office duties and traveling.*

A high-salaried employee of an electric gear shift manufacturing company, whose occupation, consisting of both office work and traveling, was that of interesting automobile manufacturers in the electric gear shift and procuring contracts for equipment of automobiles therewith, and who in visiting manufacturers used an automobile, given him for his personal use, to show how the automobile was equipped with such gear shift, was not an "automobile dealer demonstrating" or a "salesman traveling, selling, operating, exhibiting, or setting up machinery or implements or automobiles," within the classification set out in the manual of rates of an accident insurance company, but was properly placed in the classification of "office duties and traveling" by the agents of the insurer after the insured had fully and fairly stated the nature of his duties, where such classification more accurately described his occupation than any other in the manual.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

Insurance. This action was commenced by the plaintiff to recover on a policy of accident insurance issued by the defendant company on October 15, 1915, for the amount of

$15,000 to plaintiff's husband, now deceased. Upon the policy was indorsed a provision by the terms of which, if the insured met his death on a private conveyance, the amount was to be increased to $30,000. The annual premium for the policy was $120, and the premium for the private-conveyance indorsement was an additional $20. The policy was extended on October 2, 1916, for an additional year, and on November 16, 1916, the insured was accidentally killed by the overturning of his automobile, which he was driving from Detroit, Michigan, to Chicago in the course of his duties. All of the transactions in connection with the writing of the contract of insurance and the renewal thereof took place in the city of Chicago, Illinois, and it is conceded that the contract of insurance was an Illinois contract. At the time the policy was written the insured was in the advertising business as an employee of the J. Walter Thompson Company, in the capacity of advertising solicitor, and was rated "Office and traveling," and the premium referred to was based on class 1 in the classification manual.

On or about June 28, 1916, the insured changed his occupation and commenced work for the Cutler-Hammer Manufacturing Company. He stated the facts in relation to his change of occupation to the agents of the defendant company, and a change-of-occupation rider prepared by them was signed by him and attached to and became a part of the policy. It is the claim of the defendant company that the insured did not correctly state his occupation at the time in question; that the insured was a demonstrator of automobiles at the time of the making of the warranty, at the time of the change-of-occupation writing, and at the time of his death.

The policy was written and the premium rated upon the preferred rating of class 1 of "Office duties and traveling," the premium on which was $120. The policy contained a provision, commonly called a "prorate clause," to the ef-

fect that if the insured was injured "while engaged in an occupation classed as more hazardous than that stated herein, . . . liability hereunder shall be limited to such sum as the premium paid would have purchased for the increased hazard according to the company's table of rates. . . ." It was the claim of the defendant that the insured met his death while engaged in the occupation of demonstrating an automobile, and that he should therefore have been rated in class 3, in which class the rate was $160.

At the close of the trial both parties moved for a directed verdict, the jury was discharged, and all controversies of both law and fact were determined by the court. The trial court found for the plaintiff and directed judgment against the defendant for $30,000, with interest and costs, from which judgment the defendant appeals.

For the appellant there was a brief by *Lines, Spooner & Quarles,* and oral argument by *Louis Quarles* and *James T. Guy,* all of Milwaukee.

For the respondent there was a brief by *Bottum, Bottum, Hudnall & Lecher* of Milwaukee, and oral argument by *Geo. B. Hudnall.*

ROSENBERRY, J. It is the contention of the defendant upon this appeal, first, that the insured was a demonstrator at the time of the making of the change-of-occupation rider, and also continuously up to and at the time of his death; second, the statement of occupation of the insured was a warranty, and under the law of Illinois a breach of it voids the contract; third, the insured failed to properly state and fully disclose his occupation to the insurance company; fourth, where a policy is obtained through the insufficient disclosure of his occupation on the part of the insured, the insurance company is not estopped from questioning its validity; fifth, the insured should have been classified as a class 3 risk, either as (a) "Automobile dealer demonstrating," or (b) "Salesman traveling, selling or oper-

ating, exhibiting or setting up machinery or implements or automobiles;" sixth, the double-liability rider should be eliminated, and no recovery based thereon should be allowed, because it could not have been written covering the class 3 risk if the insured had made a proper disclosure; seventh, that the occupation in which the insured was engaged was more hazardous than his class 1 rating, and the principal sum of the policy should be prorated accordingly; and some other minor questions.

The main controversy in this case turns upon whether or not the insured made a full and fair disclosure to the agents, of the defendant company on June 28, 1916, at the time the change-of-occupation rider was prepared and signed. It is claimed by the defendant that the insured fraudulently concealed and misrepresented the facts material to the risk regarding his occupation and duties as an employee of the Cutler-Hammer Manufacturing Company. Upon this the trial court found:

"(8) That subsequent to entering into said employment and on the 28th day of June, 1916, the said Charles Walter Warren, at the office which the defendant maintained in the city of Chicago, conferred with W. F. Lockwood, who was an agent and representative of the defendant and employed at its said office, and said H. V. Burrows; that on said occasion said Charles Walter Warren stated to said W. F. Lockwood and H. V. Burrows that he was employed as assistant to the president of the Cutler-Hammer Manufacturing Company, and that he was engaged in selling or exploiting a new electric gear shift manufactured by his employer; that he was in the office when in Milwaukee, and the rest of the time he was traveling; that he was trying to interest the large automobile manufacturers in the device; to get contracts with them to equip their cars; that he was given a car by his employer for his own personal use, which was equipped with the device, and that he used the car in driving around to visit automobile manufacturers; that if their engineers desired, they could take the car apart and do whatever they wanted to do with it; that said W. F. Lockwood then stated that he would prepare an indorsement

reading 'Office duties and traveling,' and that thereupon said Charles Walter Warren said, 'Well, I will have to leave it to your judgment. You are insurance men. I do not know anything about insurance matters . . . and whatever you say I ought to sign, after explaining my business, I will sign.' That at said time and place W. F. Lockwood, in the presence of said H. V. Burrows and with his knowledge and approval, prepared an indorsement in which Charles Walter Warren's employment is stated 'Assistant to President, Cutler-Hammer Mfg. Co. Office duties and traveling;' and that said indorsement was then signed by said Charles Walter Warren and attached to his policy of insurance."

A careful review of the evidence convinces us that the finding is in accordance with the great preponderance of the evidence. There is no classification set out in the manual of rates and classifications which accurately describes the work in which the insured was engaged. He certainly was not a dealer in automobiles. Neither was he a "salesman traveling, selling or operating, exhibiting or setting up machinery or implements or automobiles," in the sense in which those terms are generally and ordinarily used. The classification in which he was placed by the defendant's agents more nearly and more accurately describes the deceased's occupation than any other classification appearing in the manual of rates and classification. An electric gear shift is not an automobile; and the insured was something more than a mere salesman. While of course a part of his duties was to make contracts for the manufacture and sale of the electric gear shift, he was also to introduce it to manufacturers, engineers, and others having to do with the manufacture of automobiles. He was not a mechanic, and at times at least had with him a man who understood the construction and mechanism of the device which he was introducing. He was paid a salary of $12,000 per year. While some salesmen receive very large salaries, the amount paid him is somewhat indicative of the nature and importance of his

work.   The use of the device upon different makes of auto-mobiles must necessarily have involved many mechanical and manufacturing problems.   The electric gear shift was not a machine, an implement, or an automobile.   It was a device which might in the course of manufacture be in-stalled in and made a part of an automobile.   The insured fully and fairly stated the nature of his duties as an em-ployee of the Cutler-Hammer Manufacturing Company and upon such statement the agents of the defendant company correctly placed him in the classification "Office duties and traveling."

The conclusion we have reached disposes of the other questions raised by the appellant.   If he correctly stated his occupation and was correctly classified, there was no breach of the warranty, nor is there any basis for the claim that the prorate clause should be applied in this case, and the double-liability rider was properly attached.

While the trial court concluded as a matter of law from the facts found that the defendant was estopped from in-sisting that the classification made by its agents was not binding upon it, and that the defendant was likewise es-topped from insisting that at the time of his death the in-sured was engaged in an occupation more hazardous than that stated in the indorsement, we do not reach and do not determine the question of whether or not, if the insured was classified by the agents of the defendant in a less hazardous occupation than that in which he was in fact engaged, the company would be estopped from claiming that the prorate clause, so called, should apply.   We think upon all the evi-dence he correctly stated his occupation and was correctly classified.

*By the Court.*—Judgment affirmed.